

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Thomas H. Taylor, Chairman
State Board of Public Welfare
Austin, Texas

Dear Mr. Taylor:  Opinion No. O-6822

O-6822

Re: Construction of Section 51a,
Article III, of the Constitu-
tion, as recently amended,
in respect to its self-enact-
ing feature.

We beg to acknowledge receipt of your request for
an opinion concerning the above subject matter, as follows:

"The Public Welfare Act of 1941, as amended,
provides that the State Board of Public Welfare
is responsible for the adoption of all policies,
rules and regulations for the government of the
State Department of Public Welfare, and further
charges the Board with the administration of all
welfare activities of the State in connection
with Old Age Assistance, Aid to the Blind and
Aid to Dependent Children. In assuming this re-
sponsibility, and in an effort to formulate poli-
cies, rules and regulations for the benefit of
the needy people of the state, coming within the
provisions of the law and Constitution, the Board
has carefully considered the Constitutional Amend-
ment which was submitted to the electorate on
August 25, 1945, and has directed me, as Chairman,
to submit for your consideration and opinion the
following:

"Article III, Sections 51b, 51c, and 51d
of the Constitution gave the Legislature the
power by general laws to provide for old age
assistance, aid to the blind, and aid to de-
pendent children under certain limitations
and restrictions pursuant to the authority
contained in these amendments. The Legisla-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Thomas H. Taylor - page 2

ture did enact statutes setting up the De-
partment of Public Welfare and providing
for a system of old age assistance, aid to
the blind, and aid to dependent children;
this statute being House Bill 611, Acts of
the 47th Legislature, as amended and known
as the public welfare act of 1941. The De-
partment of Public Welfare is administer-
ing the three public assistance programs
mentioned above and is performing other ad-
ministrative responsibilities provided for
in the law.

"During the regular session of the 49th
Legislature, House Joint Resolution 13 pro-
vided for the submission of a Constitutional
Amendment which would amend Article III, Sec-
tions 51a, 51b, 51c, and 51d. The Board has
been furnished with an official copy of the
Governor's Proclamation dated September 11,
1945, in which he declared and proclaimed
that on August 26, 1945, the hereinafter re-
cited Amendment to the Constitution of the
State of Texas was adopted and that said
Amendment has become, and is now, a part of
the Constitution to be known as Section 51a
of Article III:

"'Sec. 51a. The Legislature shall have
the power, by general laws to provide, sub-
ject to limitations and restrictions herein
contained, and such other limitations, re-
strictions and regulations as may by the
Legislature be deemed expedient for assist-
ance to, and for the payment of assistance to:

"'(1) Needy aged persons who are actual
bona fide citizens of Texas and who are over
the age of sixty-five (65) years; provided
that no such assistance shall be paid to any
inmate of any State supported institution,
while such inmate, or to any person who shall
not have actually resided in Texas for at
least five (5) years during the nine (9) years
immediately preceding the application for such
assistance and continuously for one (1) year
immediately preceding such application; pro-
vided that the maximum payment per month from

State funds shall not be more than Twenty
Dollars ($20) per month.

"'(2) Needy blind persons who are
actual bona fide citizens of Texas and
are over the age of twenty-one (21) years;
provided that no such assistance shall be
paid to any inmate of any State supported
institution, while such inmate, or to any
person who shall not have actually resided
in Texas at least five (5) years during the
nine (9) years immediately preceding the ap-
plication for such assistance and continu-
ously for one (1) year immediately preced-
ing such application.

"'(3) Needy children who are actual
bona fide citizens of Texas and are under
the age of sixteen (16) years; provided
that no such assistance shall be paid on
account of any child over one (1) year old
who has not continuously resided in Texas
for one (1) year immediately preceding the
application for such assistance, or on ac-
count of any child under the age of one (1)
year whose mother has not continuously re-
sided in Texas for one (1) year immediately
preceding such application.

"'The Legislature shall have the author-
ity to accept from the Federal Government of
the United States such financial aid for the
assistance of the needy aged, needy blind,
and needy children as such Government may
offer not inconsistent with restrictions here-
in set forth; provided however that the amount
of such assistance out of State funds to each
person assisted shall never exceed the amount
so expended out of Federal Funds; and, pro-
vided further that the total amount of money
to be expended out of State funds for such
assistance to the needy aged, needy blind,
and needy children shall never exceed the
sum of Thirty-five Million Dollars ($35,000,000)
per year.'

Honorable Thomas H. Taylor - page 4

"House Bill 611, Acts of the 47th Legislature, as amended, Section 14, with respect to the amount of assistance to be granted to the needy blind, provides as follows:

"'... The amount of assistance given shall provide such blind person with a reasonable subsistence compatible with decency and health, within the limitations and provisions of the Constitution of Texas as are now provided, or may hereafter be provided.'

"Section 18 with respect to aid to dependent children provides as follows:

"'... The amount of assistance given shall provide such dependent child with a reasonable subsistence compatible with decency and health, within the limitations and provisions of the Constitution of Texas as are now provided, or may hereafter be provided.'

"Section 21 with respect to old age assistance provides as follows:

"'... The amount of assistance given shall provide such aged person with a reasonable subsistence compatible with decency and health, within the limitations and provisions of the Constitution of Texas as are now provided, or may hereafter be provided.'

"In view of the foregoing we would like to submit the following questions:

"(1). Is the Constitutional Amendment, Article III, Section 51a, which was adopted on August 25, 1945, self-enacting?

"(2). If the Constitutional Amendment, Article III, Section 51a, is considered self-enacting, is there any part of the amendment which will require an enabling statute to make it effective?

Honorable Thomas H. Taylor - page 5

"(3). If the Constitutional Amendment, Article III, Section 51a, is not self-enacting, then are the previous constitutional amendments known as Article III, Sections 51b, 51c, and 51d still in force and effect?

"(4). If the Constitutional Amendment, Article III, Section 51a, is not considered self-enacting, then what is the status of House Bill 611, Acts of the 47th Legislature, as amended?

"(5). If the Constitutional Amendment, Article III, Section 51a, is self-enacting, then what is the effective date?"

It is the opinion of this Department that the recent amendment known as Section 51a of Article III of the Constitution is self-enacting, and that there is no part of the amendment which will require an enabling statute to make it self-operating.

The amendment became effective on September 11, 1945, upon the ascertainment and declaration of the result of the election, showing a majority vote for its adoption, followed upon the same day by the Governor's proclamation thereof.

Our reasons for answering Questions 1 and 2 as we do were forecast by you in your references to Sections 14, 18 and 21 of House Bill 611, adopted by the 47th Legislature.

Constitutions, whether the same be of the self-enacting type specifically declaring a rule of law, or of the type requiring a legislative enabling act to make effective a mere constitutional declaration of principle, are usually written in brief style, and in simple, clear and understandable terms. They are always to be given a liberal construction, with a view of carrying out the will and purpose of the people in adopting it.

The amendment under consideration leaves no room to doubt that it was the overriding purpose of the amendment to increase the amount of assistance to needy aged persons, the needy blind, and to needy children beyond that previously authorized by the Constitution. Neither the amended Constitution nor the amending one itself has undertaken to prescribe the limitations, restrictions and regulations by the Legislature covering the payment of such assistance. The initial

Honorable Thomas W. Taylor - page 6

paragraph or section of the amending Section 51a is as follows:

"The Legislature shall have the power by general laws to provide, subject to limitations and restrictions herein contained and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient for assistance to, and for the payment of assistance . . ." to the persons therein made beneficiaries.

To supply such limitations, restrictions and regulations the 47th Legislature did enact House Bill 611 containing the provisions quoted by you. It will be seen these provisions are as pertinent and applicable to the present amending Constitution as they were to the original or amended one. The amendment having made clear the general purpose and policy of the Constitution, and the Legislature having enacted statutes applicable alike to the amended and the amending constitutional provisions, all constitutional requirements for legislative action to make the amendment effective and presently usable, have been fully met.

The provisions of House Bill 611 quoted in your letter, if they had been passed after the adoption of the amendment, undoubtedly would be all that could be thought to be necessary to make the amendment effective. It can make no difference that they were already in the statutes — they are the appropriate legislative enactments sufficient to make the amendment effective and presently workable.

The case of State v. Brame by the Supreme Court of North Carolina, 116 S. E. 164, is a luminous one of peculiar pertinence. The Eighteenth Amendment, it will be remembered, contained the language, "The Congress and the several states shall have concurrent power to enforce this Article by appropriate legislation. * * *." Says the North Carolina opinion:

". . . . The words 'concurrent power' are not used here in the sense of denoting or designating the source of the states' power to legislate on the subject of prohibition, but as indicating that the power of Congress shall not be exclusive. Commonwealth v. Nickerson, 236 Mass. 296, 128 N. E. 273, 10 A. L. R. 1568. The amendment is a grant of power so far as the Congress is concerned, but not so as to the states. They

Honorable Thomas H. Taylor - page 7

had the power to legislate on the subject prior to the amendment and they still have concurrent power with the Congress to enact appropriate legislation for its enforcement. State v. Harrison, 184 N. C. 762, 114 S. E. 830. If the section now in question had been enacted the day after the adoption of the Eighteenth Amendment, obviously it would have been 'appropriate legislation' by this state in aid of its enforcement. It is not less so because the statute was already in existence at the time of the adoption of the amendment. United States v. Lanza et al, 43 Sup. Ct. 141, 67 L. Ed. —. There may be varying degrees of appropriateness in the legislation on this subject, but a state statute will not be declared inoperative and void unless wholly inappropriate, or unless it be in conflict with the paramount law."

So here, the initial provision of Section 51a, as amended, that "the Legislature shall have power by general laws to provide", is not at all the source of legislative power — it had that power under the general power (Article II) committing the separate branches of the Government exclusively to different magistracies, and conferring upon the Legislature the exclusive power to make laws.

State v. Brame, supra, clearly announces this principle, and so likewise our own courts have held to that rule in Watts et al v. Mann et al, 187 S. W. (2) 917(1) (writ refused) and Wilkenfeld et al v. The State of Texas, _____ S. W. (2) _____.

Of course, the limitations, restrictions and regulations contained in the amendment itself are supreme, and may not in anywise be ignored, qualified or changed, but these, plus the existing statutory limitations, restrictions and regulations, make a sensible, workable whole, sufficient to authorize the administration of the law as a presently effective and workable mandate to the administrative officers of the State.

We are not unmindful of the rule of construction that the validity of a statute is determined as of its effective date, but that rule does not militate against our conclusion here.

Honorable Thomas H. Taylor - page 8

The provisions of House Bill 611 were appropriate to the Constitution as it then existed, and they are equally appropriate to the enforcement of the present amendment. They may not be as full and complete as they could be, but they nevertheless are appropriate, and that is enough. They may of course be amended by any future Legislature, if it is deemed advisable. It will be seen the Legislature may pass such regulations (within the Constitution itself) "as may be deemed expedient for assistance".

At this point it is worthy of note that Sections 14, 18 and 21 of House Bill 611 quoted by you expressly speak not only with respect to the then existing constitutional authority, but with respect to any that "may hereafter be provided".

We have given to the amendment a liberal construction, having in mind the accomplishing of the plain purpose for which it was drafted and adopted. To hold otherwise would be, we think, to lose sight of the spirit — the essence — of the fundamental law, and this would be fatal to sound construction.

"He who knoweth not the reason of the law
Knoweth not the law."

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

Ox-MR

